IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2015


**ANTONIO BIGSBEE v. STATE OF TENNESSEE**


**Appeal from the Circuit Court for Robertson County**
**No. 06-0426     Michael R. Jones, Judge**

_____


**No. M2014-01799-CCA-R3-PC – Filed September 22, 2015**

_____


Following a jury trial, Antonio Bigsbee ("the Petitioner") was convicted of especially aggravated kidnapping and reckless endangerment and sentenced as an especially mitigated offender to thirteen and a half years' incarceration. The Petitioner filed a petition for post-conviction relief alleging that trial counsel failed to communicate a plea offer of eight years' incarceration. After a hearing, the post-conviction court denied relief. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Chelsea Nicholson (on appeal) and John Drake (at post-conviction hearing), Nashville, Tennessee, for the appellant, Antonio Bigsbee.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**


**Factual and Procedural Background**

The Petitioner was indicted, along with two co-defendants, for one count each of attempted especially aggravated robbery, especially aggravated kidnapping, and

attempted first degree murder. State v. Antonio Bigsbee, No. M2008-02514-CCA-R3-CD, 2010 WL 4188274, at *1 (Tenn. Crim. App. Oct. 22, 2010).[1] Immediately prior to trial, the State dismissed the charge of attempted especially aggravated robbery and proceeded to trial on the remaining two counts. Id. Ultimately, the jury convicted the Petitioner of especially aggravated kidnapping and reckless endangerment, as a lesser-included offense of attempted first degree murder. Id. at *5. The trial court sentenced the Petitioner as an especially mitigated offender to an effective sentence of thirteen and a half years' incarceration. This court affirmed the Petitioner's convictions on direct appeal. Id. at *10.

The Petitioner then filed a petition for post-conviction relief alleging ineffective assistance of counsel on various grounds. After the appointment of post-conviction counsel, the Petitioner filed an amended petition for post-conviction relief alleging, among other things, that trial counsel was ineffective for failing to communicate "a serious and valid [plea] offer" to the Petitioner. At the start of the post-conviction hearing, the Petitioner informed the court that he was proceeding solely on the claim that trial counsel failed to communicate a plea offer.

Brenda Mauritz, the Petitioner's mother, testified that she hired trial counsel the day after the Petitioner was arrested and that trial counsel was able to secure bond for the Petitioner. However, Ms. Mauritz claimed that, after the Petitioner was released on bond, trial counsel repeatedly missed or showed up late to appointments with the Petitioner. Ms. Mauritz claimed that trial counsel did not have a defense strategy and did not interview witnesses the Petitioner identified as having information about the incident. Additionally, Ms. Mauritz recalled that trial counsel asked her and her husband to attend a meeting with the victim and the victim's attorney[2] but trial counsel did not attend the meeting.

Ms. Mauritz stated that trial counsel did not review discovery with the Petitioner or explain "what [the Petitioner] was going to have to face." Instead, trial counsel portrayed an "I got this" mentality. Ms. Mauritz recalled that trial counsel may have told the Petitioner that the State was offering him a deal where the Petitioner would serve fifteen years in prison but trial counsel did not convey any other plea offer. Ms. Mauritz

---

[1] Although this court's opinion on direct appeal does not include a discussion of the charges against the Petitioner's co-defendants, the post-conviction court's order makes it clear that the indictment was issued against all three individuals.

[2] It is clear from the record that the person identified as the victim's attorney was a privately hired attorney and not a member of the District Attorney General's office.

understood that the Petitioner could face fifteen years' incarceration[3] if he was convicted after a trial, but she hoped that the judge would reduce the sentence because the Petitioner had never been in trouble before, worked full-time, and went to school. Ms. Mauritz was not aware of any other plea offer until after the Petitioner had been sentenced. Ms. Mauritz also reported that, approximately three months after trial counsel was hired to represent the Petitioner, trial counsel informed her that he had a conflict of interest with the Petitioner's case and needed to associate co-counsel because trial counsel had previously represented the victim. On cross-examination, Ms. Mauritz maintained that trial counsel never informed her about an eight-year plea offer.

The Petitioner testified that trial counsel advised him that he could possibly "beat" the charges against him. After the Petitioner was convicted, trial counsel told him that he would try to secure the Petitioner a thirteen-year sentence. Trial counsel never communicated a plea deal to the Petitioner. The Petitioner first learned that the State had offered him a plea deal when appellate counsel asked the Petitioner why he did not accept an offer of five years at thirty percent. The Petitioner reported that he only met with trial counsel when the Petitioner had a court date and when he paid trial counsel. The Petitioner claimed that trial counsel never had a strategy for trial. As far as the Petitioner knew, none of his co-defendants were offered plea deals from the State.

On cross-examination, the Petitioner admitted that trial counsel came to the county jail shortly after he was hired to inform the Petitioner of the charges against him. However, he claimed that trial counsel never explained the charges or their possible sentences. Instead, trial counsel simply told the Petitioner that the case was "winnable." Consequently, when the trial started, the Petitioner "believe[d] that day [that he] was gonna [sic] go home." The Petitioner stated that appellate counsel told him the State had offered to allow him to plea to a five-year sentence at thirty percent. He said appellate counsel did not show him any paperwork evidencing the offer. The Petitioner admitted that he was at the scene of the crime, and he explained that, had a plea been offered to him, he would have taken it. The Petitioner explained that he felt that he should not have been punished as harshly as his co-defendants because he never held the gun used in the crime.

Associate counsel testified that trial counsel asked for his assistance in the Petitioner's trial because trial counsel had previously represented the victim. Associate counsel conducted Ms. Mauritz's direct examination and delivered the closing argument. Associate counsel did not attend any of the meetings with the Petitioner or Ms. Mauritz. Associate counsel did not know of any plea deals offered to the Petitioner. However, he

---

[3] On cross-examination, Ms. Mauritz stated that she was not aware the maximum sentence for attempted especially aggravated kidnapping was twenty-five years. See Tenn. Code Ann. § 40-35-112(a)(1) (2006).

recalled that someone told him the State had offered one of the Petitioner's co-defendants a plea deal. On cross-examination, associate counsel clarified that he took no part in the case prior to trial and he was not aware of any discussions that took place between the Petitioner and trial counsel prior to trial.

Trial counsel testified that he was hired immediately after the Petitioner's preliminary hearing. He met with the Petitioner and Ms. Mauritz "many, many times." Trial counsel recalled that he explained the charges and reviewed discovery with the Petitioner. According to trial counsel, factors in Petitioner's favor were that the Petitioner had no criminal history and had completed high school. However, witnesses' statements and the Petitioner's own statement to police placed the Petitioner at the scene of the crime. Consequently, trial counsel tried to negotiate a plea agreement with the State. Trial counsel recalled that the first plea offer was a "package deal" of eight years' incarceration which required all three co-defendants to accept the State's offer. If any co-defendant declined the offer, then all three had to go to trial. Trial counsel communicated this offer to the Petitioner and his mother, but neither trial counsel nor the Petitioner was satisfied with the offer. They discussed the plea offer extensively, but they "thought eight years was ridiculous" based on the Petitioner's history. Trial counsel attempted to negotiate a better deal, but the State refused to agree to any other plea agreement.

Trial counsel recalled that one of the co-defendants, Jamelle Felts, also turned down the offer and was convicted after a trial. Even though Mr. Felts had turned down the offer, trial counsel recalled that the eight-year plea offer remained open to the Petitioner "all the way up until [the Petitioner's] trial day." Even after trial counsel advised the Petitioner that, under the worst case scenario, he could be sentenced to fifteen to twenty-five years with an eighty-five percent service rate, the Petitioner elected to go to trial. Trial counsel explained that the Petitioner and his family were fully aware of the eight-year offer but felt that, because of the Petitioner's background and limited involvement in the crime, he should have been treated differently than his co-defendants during plea negotiations. Counsel's trial strategy was to highlight the Petitioner's limited role in the crime in hopes that the jury would convict the Petitioner of facilitation. With a conviction for facilitation, trial counsel believed that the Petitioner would have been able to be sentenced to probation. Trial counsel admitted that, at the time of the post-conviction hearing, his law license was suspended. He stated he had not filed the paperwork to reinstate his license because he was retired.

On cross-examination, trial counsel reiterated that the Petitioner's offer never changed from the time he was indicted to the date of trial. Based on the Petitioner's history, trial counsel felt that the offer was "terrible." Trial counsel could not recall

whether the jury received an instruction for facilitation.[4] Trial counsel explained that he asked associate counsel to assist with the trial because "two is always better than one." Also, trial counsel stated

> There may have been some discussion about a conflict, but I don't think that was totally it. I think somewhere I think something came up about—I can't remember the young lady that testified for the State, the victim—not the victim, but the lady who identified him. I think at some point I may have—she may have called my office at some point or something about a case or something.

Trial counsel said that he could not recall exactly what the conflict was, but he maintained that he would have brought in associate counsel even if there was no conflict. Trial counsel also explained that his license had been temporarily suspended due to a complaint against him. Trial counsel had since resolved the complaint but had not filed the paperwork to reinstate his license. Trial counsel also admitted that his license may have been suspended in the past because he "owed some money one time" and once for CLE credits.

In a written order, the post-conviction court specifically accredited trial counsel's testimony and discredited the Petitioner's testimony. Accordingly, the post-conviction court found that the Petitioner had failed to establish his claims by clear and convincing evidence and denied post-conviction relief. The Petitioner filed an untimely notice of appeal.

## Analysis

As a preliminary matter, we must address the State's claim that the Petitioner's appeal should be dismissed for failure to file a timely notice of appeal. Rule 4(a) of the Tennessee Rules of Appellate Procedure states that the notice of appeal "shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." However, in criminal cases, the notice of appeal is not jurisdictional, and this court may waive the timely filing requirement in the interest of justice. Id. To determine whether waiver is appropriate, "this [c]ourt will consider the nature of the issues presented for review, the reasons for and length of the delay in seeking relief, and any other relevant factors presented in the particular case." State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005). In this case, the Petitioner filed his notice of appeal three days after the thirty-day deadline and asserts that he simply "miscalculated the deadline."

---

[4] At the close of proof, the post-conviction court took judicial notice of the jury instructions, which included an instruction as to facilitation of especially aggravated kidnapping.

Because the delay is minimal and the issues presented in the case concern the Petitioner's constitutional right to effective assistance of counsel, we waive the requirement for a timely filing of the notice of appeal in the interest of justice.

On appeal, the Petitioner argues that the post-conviction court erred in crediting trial counsel's testimony and asks this court to find that the Petitioner established that trial counsel was ineffective. Additionally, the Petitioner contends that trial counsel's violating the ethical rule regarding conflict of interests constituted ineffective assistance of counsel.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a trial court's findings of fact under a *de novo* standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. Id. (citing Tenn. R. App. P. 13(d); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law are reviewed "under a purely *de novo* standard, with no presumption of correctness . . . ." Id.

When reviewing the trial court's findings of fact, this court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." Id. at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." Id. (citing Henley, 960 S.W.2d at 579).

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

The Strickland standard also applies during plea negotiations. Missouri v. Frye, — U.S. —, 132 S. Ct. 1399, 1407-09 (2012); Nesbit v. State, 452 S.W.3d 779, 787 (Tenn. 2014). Accordingly, during the plea bargain process, "counsel has the responsibility to render effective assistance as required by the Sixth Amendment." Nesbit, 452 S.W.3d at 787 (citing Frye, 132 S. Ct. 1407-08). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 132 S. Ct. at 1408. "A fair trial will not correct trial counsel's deficient performance in failing to convey a plea offer[.]" Nesbit, 452 S.W.3d at 787 (citing Lafler v. Cooper, — U.S. —, 132 S. Ct. 1376, 1381 (2012)).

In this case, trial counsel testified that he communicated to the Petitioner the State's offer of eight years' incarceration at a thirty percent service rate and he discussed that offer with the Petitioner and Ms. Mauritz on several occasions. Although the Petitioner and Ms. Mauritz claimed that trial counsel never communicated the State's offer of eight years at thirty percent, the post-conviction court explicitly credited trial counsel's testimony. We will not reweigh trial counsel's credibility on appeal. Therefore, we conclude that the Petitioner had failed to prove that trial counsel was deficient and is not entitled to relief on this ground.

The Petitioner also claims that trial counsel was ineffective because he had a conflict of interest with the Petitioner's case. Although the Petitioner presented proof as to this matter during the post-conviction hearing, the Petitioner failed to allege this claim in either his pro se petition or amended petition for post-conviction relief. Further, the post-conviction court did not address this claim in its order denying post-conviction

relief. We conclude that the Petitioner waived consideration of the issue by failing to raise it in his petition for post-conviction relief. Tenn. Code Ann. § 40-30-104(d), (e); Louis Mayes v. State, No. W2012-01470-CCA-R3-PC, 2013 WL 6730105, at *7 (Tenn. Crim. App. Dec. 18, 2013), perm. app. denied (Tenn. Apr. 11, 2014).

## Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE