IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 4, 2005 Session

## JOSEPH GRANDERSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-22144   John P. Colton, Judge**

_____

**No. W2004-02353-CCA-R3-PC - Filed April 13, 2006**

_____

The petitioner, Joseph Granderson, was convicted by a jury of first degree murder and sentenced to life imprisonment. This Court affirmed the petitioner's conviction and sentence on appeal. State v. Joseph Granderson, No. 02C01-9712-CR-00466, 1998 WL 506658 (Tenn. Crim. App. at Jackson, Aug. 20, 1998), perm. app. denied, (Tenn. Mar. 8, 1999). Subsequently, the supreme court denied permission to appeal. The petitioner filed a pro se petition for post-conviction relief alleging ineffective assistance of counsel on numerous grounds. Counsel was appointed and several amended petitions were filed. After hearing evidence on the petition over the course of several months, the post-conviction court entered an order granting post-conviction relief on the basis that trial counsel was ineffective because she failed to properly inform the petitioner of his potential sentence if convicted of first degree murder. The State appeals the post-conviction court's decision. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J, joined and ALAN E. GLENN, J., not participating.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Steve Crossnoe, Assistant District Attorney General, for the appellant, State of Tennessee.

Marty B. McAfee, Memphis, Tennessee, for the appellee, Joseph Granderson.

**OPINION**

The facts underlying the petitioner's conviction were presented on direct appeal by this Court as follows:

At approximately 11:30 p.m. on November 10, 1995, Michael Pipkin (the victim) and Michael Peete went to L.D.'s Lounge, a late-night club in Memphis. Approximately thirty (30) minutes after their arrival, Pipkin and Peete saw the defendant. The defendant was the father of Pipkin's step-children and was introduced to Peete by Pipkin. Peete testified at trial that defendant and Pipkin did not argue or exchange angry words. He further stated that defendant's speech was not slurred, and he did not appear to be intoxicated.

Subsequently, Pipkin and Peete returned to their table. When they came out of the restroom, defendant was no longer standing at the bar. Approximately one (1) hour later, Peete saw defendant standing at the front door of the lounge shooting at Pipkin. Peete ducked out of the way and heard Pipkin shout, "I'm hit!" Pipkin received gunshot wounds to his right arm, abdomen and pelvis. He died on November 17, caused by a pulmonary embolus[1] due to gunshot wounds to the abdomen and pelvis.

Peete testified that Pipkin and defendant did not fight or argue that night, nor did the victim ever threaten the defendant. He also stated that Pipkin was not carrying a weapon at the time he was shot.

Tony Coleman, a part-time employee at L.D.'s, testified that he saw the defendant running out of the lounge after the shooting. He watched the defendant run across the street, and defendant did not appear intoxicated as he was not stumbling. Louis Conley, the owner of the establishment, was standing next to defendant during the shooting. He, too, did not see any indication that defendant was intoxicated.

Wanda Pipkin, the victim's wife, testified that she and defendant were romantically involved for several years and had two (2) sons. Their relationship ended in 1993, and she began dating the victim approximately one (1) year later. The defendant was jealous of her relationship with the victim and told her that he did not want her to "mess with anyone else." In late summer 1995, defendant and the victim were involved in several altercations as a result of this jealousy. During this time, Mrs. Pipkin was pregnant, and defendant threatened to kill her unborn child because he did not want her to have children "by nobody [sic] else but him." Defendant also made threats to kill Pipkin. Mrs. Pipkin testified that the defendant often carried a weapon, but the victim did not.

---

[1]Dr. Jerry Francisco, the Shelby County Medical Examiner, described a pulmonary embolus as a blood clot which travels to the lungs and shuts off the blood flow.

The defendant telephoned Mrs. Pipkin on the night after the shooting. She asked the defendant if he shot her husband, which he denied. He told her that he was in Mississippi the previous night. Although defendant was arrested for the offense on November 25, he continually denied involvement to Mrs. Pipkin until September 1996, when he admitted that he shot the victim "out of fear."

Defendant testified on his own behalf at trial. He stated that he drank excessively, suffered memory loss when he drank and was unable to "function" if he drank in excess. He stated that the victim threatened him repeatedly and was the aggressor in the various altercations between the two men. He testified that as a result of these conflicts, he began carrying a gun out of fear for his safety.

Defendant testified that on November 10, he drank an excessive amount of various alcoholic beverages. He arrived at L.D.'s at approximately 11:00 p.m., and saw Pipkin and Peete shortly thereafter. Although he was afraid of Pipkin, he remained at the club. Defendant was carrying a gun at the time. While he was sitting at a table, he and Pipkin made eye contact. Pipkin began staring at him, giving him a "hard look." As the defendant was about to leave, Pipkin "really started looking at [defendant]." Defendant testified that he felt threatened by the victim's presence in the lounge. He stated that the victim made a move as if to reach for a weapon, and defendant shot him "out of fear." He then ran from the club and went to his sister's house.

He further testified that he did not remember shooting Pipkin until after Pipkin died. Although he claimed at trial that he was afraid of the victim, defendant acknowledged that the victim never threatened him that night, and he never saw the victim with a weapon.

In rebuttal, the state presented the testimony of the two (2) homicide detectives who questioned defendant concerning this offense. Both detectives testified that defendant never mentioned that the victim appeared to be reaching for a weapon when defendant shot him. The defendant's transcribed statement corroborates their testimony.

State v. Joseph Granderson, No. 02C01-9712-CR-00466, 1998 WL 506658, at *1-2 (Tenn. Crim. App. at Jackson, Aug. 20, 1998), perm. app. denied, (Tenn. Mar. 8, 1999).

At the conclusion of the jury trial, the petitioner was convicted by the jury of first degree murder and sentenced to life in prison. On direct appeal, the petitioner argued that the State failed to prove premeditation beyond a reasonable doubt and that the jury wrongly rejected his claim of self defense. This Court upheld both the petitioner's conviction and sentence. State v. Joseph Granderson, 1998 WL 506658, at *5. The petitioner's application for permission to appeal to the supreme court was denied on March 8, 1999.

-3-

The petitioner subsequently filed a pro se petition for post-conviction relief, alleging ineffective assistance of counsel at trial on a multitude of grounds. After counsel was appointed, several amended petitions were filed, narrowing the grounds on which the petitioner claimed that he received ineffective assistance of counsel. The petitioner claimed that counsel was ineffective for: (1) failing to obtain a psychological evaluation of the petitioner; (2) failing to communicate adequately and investigate properly; (3) incorrectly advising the petitioner that a life sentence meant twenty-five years incarceration rather than fifty-one years incarceration; (4) failing to oppose the State's objection to the admission of the petitioner's statement; and (5) failing to develop the petitioner's theory of self-defense.

## Evidence at the Post-Conviction Proceedings

Several witnesses testified at a series of hearings held over the course of nine months beginning August 1, 2003, and ending May 28, 2004. The petitioner's sister, Monique Smith, testified that she and the petitioner had difficulty communicating with the petitioner's appointed public defender. Ms. Smith tried numerous times to talk to trial counsel outside the courtroom or by telephone. Ms. Smith even contacted trial counsel's supervisor, Loyce Lambert, and expressed her frustration with trial counsel. Ms. Smith stated that she gave trial counsel the names of several potential witnesses who knew about conflicts between the petitioner and the victim. She also told trial counsel about the petitioner's history of head injury and mental health problems, informing trial counsel that the petitioner was hit in the head as a child when a dumpster fell on him, leaving him unconscious for several hours, and that the petitioner was a "resource" student as a child.

Cedric Wright, a friend of the victim, testified that the victim usually carried a weapon. Mr. Wright recounted several confrontations between the victim and the petitioner. Additionally, Bridget Thomas, a friend of the petitioner, testified that the victim was violent and carried a gun.

Wanda Pipkins, the mother of the petitioner's two sons and girlfriend of the victim, claimed that the victim had threatened the petitioner prior to the shooting, however, she testified that she lied in earlier statements to the police.

Dr. Joseph Angelillo, a clinical psychologist, testified that he performed a mental evaluation on the petitioner and discovered that the petitioner had a full-scale IQ of 71, a score that placed the petitioner in the category of Borderline Intellectual Functioning. Dr. Angelillo explained that the petitioner's IQ level could affect his ability to form intent and make decisions in stressful situations. Dr. Angelillo was emphatic that the information contained in trial counsel's file recounting the petitioner's head injury, history of blackouts, anxiety, special education classes, and significant alcohol use should have triggered contact with a psychologist prior to trial and a request for testing.

Trial counsel testified that she began working at the Public Defender's Office in 1990 and was a member of the capital defense team from 1995 to 1998, when she left the office to become a judge. At the time she represented the petitioner, trial counsel explained that she had handled between ten and twenty-five first degree murder cases. Trial counsel "somewhat" recalled the facts

of the petitioner's case and that the theory at trial was self-defense and voluntary intoxication. Trial counsel claimed that the case file was "not a complete file, but most of the file." She stated that someone else cleaned out her office when she left the Public Defender's Office and that "a lot of information that I had, that may not have necessarily been in the files, have [sic] been misplaced, or never placed in the correct file." Trial counsel claimed that she saw no effects of mental illness in the petitioner and that she had no question about his competency. She could not remember whether a mental evaluation was completed, but did not see a request for an evaluation in the file. Trial counsel stated that she provided the petitioner with all materials she received through discovery and reviewed the mitigation report that was prepared by investigator Joyce King. Further, trial counsel claimed that she made efforts to secure all necessary and beneficial witnesses prior to trial. Trial counsel stated that she was aware of the change in the law concerning the minimum time to be served before parole consideration on a life sentence, but could not remember when the law changed. At the post-conviction hearing, trial counsel could not remember whether she told the petitioner that his minimum sentence would be twenty-five years or fifty-one years, but that she told him "whatever it [the law] was at the time."

Loyce Lambert, trial counsel's supervisor, testified that trial counsel left her files in disarray when she left the Public Defender's Office. Ms. Lambert recalled receiving several complaints about trial counsel from the petitioner's family. As a result of the complaints, Ms. Lambert visited with the petitioner in jail. Ms. Lambert testified that her office took note of the 1995 change in the law regarding release eligibility for persons serving life sentences for first degree murder convictions.

Joyce King, an investigator for the public defender's office, testified that she was the social investigator assigned to the petitioner's case. She gather information about the petitioner's educational and employment background and provided that information to trial counsel. Ralph Nally, a legal investigator for the Public Defender's Office, was also assigned to the petitioner's case. Mr. Nally interviewed several witnesses as directed by trial counsel. Additionally, Mr. Nally met with the petitioner several times prior to trial.

Lee Coffee, the Assistant District Attorney who prosecuted the petitioner, testified that trial counsel was well-prepared for trial and that the petitioner was not cooperative with trial counsel. Mr. Coffee claimed that he never made a firm offer to settle the petitioner's case because trial counsel informed him that the petitioner insisted on going to trial.

The petitioner testified that trial counsel met with him approximately ten times prior to trial. The petitioner recalled the initial intake meeting where he informed trial counsel and the investigators of his special education classes, blackouts, and head injury. The petitioner stated that he was not given a mental evaluation prior to trial. The petitioner reiterated the history of his volatile relationship with the victim, including threats and confrontations. The petitioner claimed that he gave all of this information, including the names of several witnesses, to trial counsel. The petitioner testified that trial counsel told him that he would get life in prison if he was convicted at trial and that life meant twenty-five years in prison. The petitioner also claimed that trial counsel pulled him

aside before the beginning of the trial and informed him that the State had offered twenty years. At that point, the petitioner testified that he told trial counsel he would take the twenty-year offer, but that trial counsel told him to "hold on." Trial counsel and the petitioner then went into lock-up where trial counsel began talking to the petitioner about testifying. The petitioner claimed that trial counsel never mentioned the twenty-year offer again, but stated that "the family wanted to prosecute." The petitioner never denied shooting the victim, claiming instead that he shot the victim in self-defense.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In a written order, the post-conviction court granted the petition for post-conviction relief, determining that trial counsel was ineffective for failing to properly advise the petitioner about his potential prison exposure. In that order, the post-conviction court made the following findings of fact and conclusions of law:

> Petitioner's first claim is that counsel was ineffective in failing to order a mental evaluation of petitioner. An investigation into his mental competency, petitioner claims, would have produced evidence showing that he could not form the intent to commit murder, and would not have been convicted of murder in the first degree. Petitioner offers numerous evidence that h possessed limited mental abilities and was in need of an evaluation to determine his capacity to form intent; however, the evidence of such a need is not clear and convincing. There is other evidence in the record that petitioner was of adequate competency. At the post-conviction hearing, counsel stated that leading up to trial petitioner appeared coherent and able to understand the negotiation process. Counsel stated also that petitioner never claimed that he was mentally ill when he committed the crime, although he did claim that he was drunk. Counsel concluded that, based on her meetings with petitioner and his family, there was no need for a psychiatrist to testify on his behalf. While counsel is not a medical expert, our review of her performance must be highly deferential. Decisions an attorney makes must not be judged in hindsight, but instead on their reasonableness at the time they were made.

> . . . .

> Here, we find that counsel's decision not to order a mental evaluation was not just a matter of strategy, but was based on specific information and sound reasons. It was based on observations from numerous meeting with petitioner leading up to trial.

> . . . .

> Petitioner next claims that counsel was ineffective in failing to develop a theory of self-defense through evidence or prior violent incidents between petitioner and the victim. Had counsel investigated certain witnesses and incidents, petitioner alleges, evidence that the murder was the product of adequate provocation or self-

-6-

defense could have been presented and the verdict likely would have been different. However, petitioner fails to show this allegation by clear and convincing evidence. At the hearing, counsel testified that she did investigate certain witnesses for the defense, as well as incidents of the victim's violent nature. Counsel's notes and the notes of the investigator support this. Moreover, counsel's decision not to use this information at trial is a matter of strategy that we will not scrutinize. . . . The decision not to investigate certain witnesses, like the decision not to order a mental evaluation, was a strategic choice counsel made for specific, credible reasons. the record indicates, for instance, that the testimony of Wanda Pipkins, a potential witness, would show that petitioner instigated some of the previous confrontations between petitioner and the victim. Furthermore, counsel's theory of defense at trial relied on self-defense and voluntary intoxication. In light of this, we find counsel's decision not to use certain witnesses to be a reasonable professional judgment. . . . In conclusion, our presumption that counsel's decision was within her discretion has not been overcome by petitioner's allegations, thus his claim is without merit.

Petitioner asserts that counsel was ineffective in failing to object to the exclusion of a statement made by petitioners, as well as failing to object to a comment by the State that allegedly violated petitioner's right to remain silent. Petitioner raises these allegations in his amended petitioner, but TCA 40-30-110(f) requires the petitioner to prove their allegations at th post-conviction hearing. Petitioner did not make any mention of his allegations at the hearing, and did not offer any evidence in support, thus the claim is without merit.

Petitioner claims that counsel advised him that he faced a prison sentence of twenty-five years if convicted, when he actually faced fifty-one years. Counsel was not aware of the difference, petitioner asserts, and was not aware that the law affecting the sentence had changes before the murder was committed. Had he known his actual exposure, petitioner claims, he would have accepted the State's offer of a twenty-year sentence.

We find that petitioner has sufficiently proven his claim and is entitled to relief. First, petitioner has demonstrated deficient performance of counsel. Counsel was deficient in failing to inform petitioner of his actual exposure in light of the change in law. The statute at the time counsel was advising petitioner mandated that persons committing murder in the first degree after July 1, 1995 would receive no release eligibility, and would serve 100% of their sentence less credits up to a 15% maximum. TCA 40-35-501(i)(1)(1995). Petitioner committed the crime after July 1, 1995. In being sentenced to life imprisonment, he faced sixty years, thus after applying the 15% credit maximum, he faced fifty-one years. Reasonable effective assistance demands that a defense attorney be aware of these changes and advise their client accordingly. Counsel failed to do so, thus her performance was deficient under Strickland.

-7-

We find also that petitioner has proven his claims by clear and convincing evidence. Petitioner offers a letter written by him on July 29, 1997, shortly after he was sentenced, addressed to counsel. In it he is confused about his parole status and refers to TCA 40-35-501(i)(1). He writes:

> According to this attorney memo, I will have to do 51 calander [sic] years before being eligible for parole. You did not tell me that the law had changed, or did you know that the time had went from 25 calander [sic] years to 51 yr. If you would have informed [me] of this I would have took the 25 yr deal the state offerd [sic] me at frist [sic].

In determining whether petitioner offers his proof by clear and convincing evidence, the threshold issue is whether counsel actually told him that he would face twenty-five years. Counsel stated that she could not remember if she told petitioner twenty-five or fifty-one years. Petitioner claims that counsel did tell him twenty-five years, but this is not enough. However, we find that the July 29 letter establishes that counsel told the petitioner twenty0five years: unlike a claim to the court for post-conviction purposes, which may lack credibility, petitioner's letter is more personal in nature and motivated out of genuine concern.

Under <u>Strickland</u>, petitioner must also establish that, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. We find that petitioner does establish this. At the hearing, counsel testified that the State made a twenty-year offer, which petitioner declined. Petitioner at this point was under the impression he faced only twenty-five years if convicted. It would certainly have altered the outcome had counsel properly informed him of his exposure: knowing that he actually faced fifty-one years, petitioner would no doubt have taken the State's offer.

### Post-Conviction Standard of Review

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. <u>See</u> Tenn. Code Ann. § 40-30-110(f); <u>Momon v. State</u>, 18 S.W.3d 152, 156 (Tenn. 1999). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. <u>See</u> <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the court's findings unless the evidence in the record preponderates against those findings. <u>See</u> <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn. 1997); <u>Alley v. State</u>, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. <u>See</u> <u>State v. Honeycutt</u>, 54 S.W.3d 762, 766 (Tenn. 2001). All questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the

factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79. However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Ineffective Assistance of Counsel

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. See Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." Henley, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. See id. at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

On appeal, the State argues that the post-conviction court erred in granting post-conviction relief based on a finding that the petitioner received ineffective assistance of counsel. Specifically, the State argues that there was not "clear and convincing proof that [trial counsel] advised the defendant incorrectly about how much time he would have to serve on a life sentence." The petitioner also challenges the post-conviction court's denial of relief as to trial counsel's failure to request a mental evaluation and failure to present witnesses at trial to testify about the victim's violent nature.

## Failure to Request Mental Evaluation

At the post-conviction hearing, trial counsel testified that she was aware of the petitioner's history of special education classes and childhood head injury. However, trial counsel stated that she observed no effects of mental illness and had no question about the petitioner's competency. The petitioner never told trial counsel that he was mentally ill or incompetent. Dr. Angelillo testified that at the time he evaluated the petitioner, the petitioner was in the category of borderline intellectual functioning. However, Dr. Angelillo admitted that he did not test the petitioner at the time of the crime. The post-conviction court determined that the petitioner had not produced clear and convincing evidence such that would have necessitated a pre-trial mental evaluation. Furthermore, the post-conviction court determined that the decision not to request an evaluation was "not just a matter of strategy, but was based on specific information and sounds reasons . . . observations from numerous meetings with petitioner leading up to trial." The record supports the post-conviction court's conclusion that trial counsel was not deficient in this regard. Further, the petitioner has presented no proof that he was prejudiced by trial counsel's performance. this issue is without merit.

## Failure to Present Witnesses

The petitioner next complains that the post-conviction court erred by determining that trial counsel was not ineffective for failing to subpoena witnesses that would establish the victim's reputation for violence. At the post-conviction hearing, the petitioner presented three witnesses who testified that they had seen the victim assault people and witnesses a prior altercation between the petitioner and the victim. Trial counsel testified that she and her staff interviewed witnesses and developed the petitioner's self-defense theory prior to trial. The post-conviction court determined that trial counsel's decision not to interview certain witnesses or present them at trial was "a strategic choice . . . made for specific, credible reasons." As stated above, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. See Adkins, 911 S.W.2d at 347. Further, this Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. See id. The petitioner has failed to meet the burden of proof required of him. The evidence does not preponderate against the determination of the post-conviction court. This issue is without merit.

## Potential Length of Sentence

Finally, the State appeals the post-conviction court's determination that trial counsel was ineffective for improperly informing the petitioner that a life sentence was the equivalent of a twenty-five year prison sentence.

At the post-conviction hearing, the petitioner testified that trial counsel informed him that life in prison as a result of a first degree murder conviction was the equivalent of twenty-five years in prison. The petitioner stated that he rejected a plea offer of twenty years based on the assertions of trial counsel as to the definition of a life sentence. The petitioner testified that had he known that

-10-

a life sentence was the equivalent of fifty-one years, he would have taken the twenty-year plea offer from the State. The petitioner's testimony was bolstered by a two-page letter from the petitioner to trial counsel that was dated July 29, 1997, several months after the petitioner was sentenced. The letter appeared in trial counsel's case file. The first page of the letter contained the heading "Re: Sentencing Correction," and in the letter the petitioner expressed his concern in discovering that the TDOC records showed that he had been sentenced to life without parole and would have to serve 100% of his sixty-year sentence. The second page of the letter contains a copy of an attorney general opinion stating that life in prison requires fifty-one years of service. Beneath the opinion is a type-written note with no signature, stating:

> According to this attorney memo, I will have to do 51 calander [sic] years before being eligible for parole. You did not tell me that the law had changed, or did you know that the time had went [sic] from 25 calander [aic] years to 51 yr. If you would have informed [me] of this I would have took [sic] the 25 yr deal the state offerd [sic] me at frist [sic].

Trial counsel testified that she reviewed the file thoroughly enough to note that there were several pages missing from the file. Trial counsel did not dispute the authenticity of the letter from the petitioner and the State did not object when the letter, as part of trial counsel's file, was made an exhibit at the post-conviction proceeding.

The State now argues that the second page of the letter was an unauthenticated document and thus not clear and convincing proof of trial counsel's failure to properly inform the petitioner of the possible sentence. In granting the petition, the post-conviction court gave credibility to the testimony of the petitioner and determined that the letter from the petitioner to trial counsel bolstered the petitioner's position because it was "personal in nature and motivated out of genuine concern." As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trial of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The evidence does not preponderate against the trial court's credibility determination herein. The petitioner carried his burden of proving that trial counsel was ineffective in failing to properly inform the petitioner regarding his potential sentence if convicted. Further, the petitioner proved that, but for counsel ineffectiveness, the outcome of the trial would have been different as the petitioner would have accepted the State's plea offer. Accordingly, the judgment of the post-conviction court is affirmed.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed. Accordingly, this matter is remanded to the trial court for a new trial.

_____

JERRY L. SMITH, JUDGE