IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2017

**TRAVIS STEED v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
No. C-15-206        Donald H. Allen, Judge
_____

**No. W2017-00156-CCA-R3-PC**
_____

Travis Steed ("the Petitioner") petitioned for post-conviction relief from his convictions of first degree felony murder, second degree murder, felony reckless endangerment, convicted felon in possession of a handgun, and attempted second degree murder. Following a hearing, the post-conviction court denied relief. On appeal, the Petitioner claims that he was denied effective assistance of counsel as a result of trial counsel's failure to interview and call certain witnesses that the Petitioner contends were critical to his defense. After a thorough review of the appellate record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Colin Morris, Jackson, Tennessee, for the appellant, Travis Steed.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On the night of February 26, 2012, a party at the Karma Lounge in downtown Jackson ended in gunfire, leaving over a dozen people injured and one man, LeCarlos Todd, dead. *State v. Travis Lamonte Steed*, No. W2014-00146-CCA-R3-CD, 2015 WL 2258405, at *1 (Tenn. Crim. App. May 14, 2015). The Petitioner was indicted by the

Madison County Grand Jury for the premeditated first degree murder of Mr. Todd; the first degree felony murder of Mr. Todd in perpetration of the attempted first degree premeditated murder of Triveno Freeman; the attempted first degree premeditated murder of Mr. Freeman; the aggravated assault of Jarvis Rockamore, the aggravated assault of Solomon Robinson; and being a felon in possession of a handgun. *Id.* Following a jury trial, the Petitioner was convicted of first degree felony murder; second degree murder; felony reckless endangerment; convicted felon in possession of a handgun; and attempted second degree murder. *Id.* The court sentenced the Petitioner to serve an effective life sentence plus twenty-four years. *Id.*

The Petitioner timely filed a pro se "Petition for Post-Conviction Relief," claiming numerous grounds, most of which involved issues which were raised or could have been raised on direct appeal. Counsel was appointed, but no amended petition was filed. At the post-conviction hearing and on appeal, the Petitioner argued only one ground—that he was denied the effective assistance of counsel because trial counsel failed to interview certain witnesses and to call those witnesses during the trial. The Petitioner claims that the witnesses were critical to his defense.

*Post-Conviction Hearing*

The Petitioner's trial counsel was the only witness called by the Petitioner at the post-conviction hearing. The State called no witnesses.

Trial counsel testified that he was appointed to represent the Petitioner a few months after the Petitioner was indicted. He filed a motion for discovery and as far as he knew was provided all of the information the State had concerning the case. Either trial counsel or his co-counsel visited the Petitioner about six times while he was incarcerated. Trial counsel recalled the facts of the Petitioner's case as follows:

> At the Karma club the night of the incident, two rival groups were present: the Petitioner and his friends, and Mr. Todd – the victim – and his friends. Trevino Freeman, one of Mr. Todd's friends, reportedly began flirting with the Petitioner's date, and in response, one of the Petitioner's friends got into a fight on the dance floor with Mr. Freeman. Although Mr. Freeman and the Petitioner's friend ended the fight and shook hands, a few minutes later, the Petitioner approached Mr. Todd's group of friends and fired a gun into the group.

According to trial counsel, the Petitioner was among the eighteen to nineteen individuals shot during the gunfight. The police recovered spent .40, .45, and .380 caliber casings and projectiles during their investigation at the club. Although the

Petitioner could be seen on the club's surveillance video firing a pistol, trial counsel's theory was that the Petitioner fired in self-defense. Counsel said that several witnesses behaved in a dishonest or evasive manner during the investigation; and that the video evidence was inconclusive regarding who or what started the gunfight. For example, Solomon Robinson, one of Mr. Todd's friends, testified at trial that he fired his pistol in self-defense. Trial counsel was able to impeach Mr. Robinson's credibility using a prior statement provided to the police in which he claimed that he never fired a weapon. Trial counsel attempted to demonstrate that the Petitioner had acted in self-defense against Mr. Freeman by demonstrating that Mr. Freeman had lied to police on two occasions and had provided an incorrect description of the Petitioner.

Trial counsel admitted that he did not interview the twenty witnesses listed on the face of the indictment. He said that the witnesses had provided statements to the police and he doubted that the witnesses would have provided helpful testimony to the defense. He stated that most of the witnesses were not associated with either the Petitioner's group or Mr. Todd's group and were not in the direct vicinity of or eye witnesses to the incident. He admitted, in retrospect, that it was possible that one of the witnesses listed on the indictment could have been beneficial to the defense.

The Petitioner provided trial counsel with the names of two potentially favorable witnesses – Marvin Hodge and Brittany Wilson. However, trial counsel and co-counsel were unable to contact them. They found phone numbers for them through the Lexis database, but neither of the potential witnesses responded to the calls.

The post-conviction court took the matter under advisement. By letter addressed to counsel, the terms of which were incorporated by reference in the post-conviction court's order, the post-conviction court made findings of fact and conclusions on law. The post-conviction court accredited the testimony of trial counsel and found "that the advice given and the services rendered by trial counsel were certainly within the range of competence demanded of attorneys representing defendants in criminal cases" and that the Petitioner "failed to show that there is a reasonable probability that, but for trial counsel's performance, the result of the trial proceeding would have been different." The court further found that "there are no other grounds shown by the Petitioner upon which post-conviction relief can be granted." After finding that the Petitioner failed to meet his burden of proof, the post-conviction court denied relief.

## Analysis

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### Ineffective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

- 4 -

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

*Failure to Interview Witnesses*

The Petitioner contends that witnesses critical to his defense were not interviewed or called to testify at his trial and that this deficient performance on the part of trial counsel unfairly prejudiced his defense. When a petitioner claims that trial counsel was ineffective for failing to discover, interview, or present a witness in support of the petitioner's defense, such witness should be presented at the post-conviction hearing. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As this court has previously stated:

> As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel.

*Id*.

The Petitioner failed to specifically identify or to present any witness whom he claimed should have been interviewed or called to testify at trial. The burden is on the Petitioner to present more than speculation that a material witness might exist or that a witness's testimony could have affected the outcome of the trial. By failing to present such a witness at the post-conviction hearing, the Petitioner failed to establish prejudice under *Strickland. Id*. at 758.

## Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE