IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2018

## DENVER JOE MCMATH, JR. v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
No. 2009-A-419      Monte Watkins, Judge
_____

### No. M2017-02426-CCA-R3-PC
_____

The petitioner, Denver Joe McMath, Jr., appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel at trial and on appeal. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Leah R. Wilson, Nashville, Tennessee, for the appellant, Denver Joe McMath, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Deborah Housel, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

#### *Trial*

The petitioner was convicted of four counts of aggravated sexual battery and four counts of rape of a child for which he received an effective sentence of 140 years. On direct appeal of his convictions, this Court summarized the relevant facts as follows:

> The victim was born on September 5, 1990. [The petitioner] was her mother's boyfriend and the father of her younger half-brother. At the time

of the crimes, the victim lived with [the petitioner], her mother, her half-brother, her two sisters, and her older brother.

The victim recalled that the first incident happened during the winter of her fourth grade year. She testified that [the petitioner] told her to come into his bedroom and sit beside him on the bed. [The petitioner] kissed the victim, inserting his tongue into her mouth, and then gave her some coloring books. On another occasion, [the petitioner] went into the victim's bedroom and touched her breasts, with his hand on top of her clothes, while she was sleeping in her bed. The victim testified that one night, "late at night," [the petitioner] went into her bedroom where she and her twin sister were sleeping, and performed oral sex on her. She testified that [the petitioner] pulled her pants down and put his mouth on her vagina.

The victim recalled an incident when she was in the sixth grade and [the petitioner] made her perform oral sex on him in the laundry room of their house. The victim did not know what oral sex was, and [the petitioner] told her to "put [her] mouth on it, and [she] had no choice." The victim testified that it happened "[a] lot." She testified that [the petitioner] ejaculated in her mouth. She testified that she was afraid that if she did not do as [the petitioner] told her, [the petitioner] would beat her. She testified, "he always beat[ ] us." The victim testified that she could not count the number of times she performed oral sex on [the petitioner]. She recalled the incident in the laundry room and another occasion in the kitchen. On one occasion, her older brother walked into the laundry room while the victim was performing oral sex on [the petitioner], and [the petitioner] "just started beating him."

The victim also testified that [the petitioner] called her downstairs to watch pornography with him. She testified that [the petitioner] was masturbating while watching two people on television have sex. [The petitioner] then told the victim to go to the laundry room, where he made her perform oral sex on him. She testified, "[o]ne time, he had called me downstairs and he was rolling up weed and then he smoked it and then told me to smoke it." The victim smoked the marijuana and then went upstairs, but she was not feeling "normal" and she thought she was "high." [The petitioner] called her back downstairs and made her perform oral sex on him.

On another occasion, the victim fell asleep in her mother's bedroom while watching her youngest brother while her mother was at work. She

awoke to [the petitioner] touching her. The victim recalled another incident when [the petitioner] touched her chest in the living room. She testified, "[I] was just scared and I told him -- I told him that I was going to tell my mother and he said [']you tell [,] I'm going to kill you.[']"

The victim testified that the abuse ended when she was in eighth grade after the family moved to another residence. [The petitioner] "stayed there on and off." The victim's older brother told the victim's mother about the abuse when the victim was in the tenth grade.

The victim's older brother testified that [the petitioner] physically abused him as a child. He recalled an incident when his mother was in the hospital giving birth to his younger brother, and [the petitioner] told him to watch for a cab that was coming to pick him up. After waiting for awhile and not seeing a cab, he went upstairs to tell [the petitioner]. When he walked inside the bedroom he saw [the petitioner] "on the bed with his thang out and [the victim] was in the room with him." He testified that [the petitioner]'s penis was erect. On another occasion, at 2:30 or 3:00 a.m., the victim's brother saw [the petitioner] "on top of [the victim] giving her oral sex" in the living room. On another occasion, the victim's brother was outside and he saw [the petitioner] and the victim through the window in the laundry room. He testified "just something was awkward . . .." He testified that in 2007, during an argument with the victim, he told his mother that [the petitioner] had abused the victim in the past.

The victim's mother testified that she and [the petitioner] lived together with her five children for 15 years. She testified that [the petitioner] never had a "steady job" and that he "demanded money" from her. She testified that when the victim was 16 years old, she discovered that [the petitioner] had previously molested the victim. The victim's mother confronted [the petitioner] with the allegation, and [the petitioner] initially denied it. [The petitioner] then said, "'if I did do it I was on drugs and alcohol.'" During the investigation of this case, the victim's mother attempted to speak to [the petitioner] while wearing a "wire," but [the petitioner] refused to meet with her and said, "Bitch, you're trying to set me up." The victim's mother received a letter from [the petitioner] to his son, the victim's younger brother, that contained a drawing of a woman with a gun to her head. She received the letter on the Saturday prior to testifying in this case. She perceived the drawing as a threat.

- 3 -

Melinda Evans, an investigator with the Tennessee Department of Children's Services, testified that she investigated the allegations against [the petitioner] after the victim's twin sister disclosed information about the abuse to someone at school. She testified that the victim was "initially very reserved and very reluctant" to speak to her. The victim told Ms. Evans that [the petitioner] had touched her breasts and buttocks on top of her clothes. The victim was 17 years old at the time of the interview and stated that the incidents happened four years prior. The victim denied that she had ever touched [the petitioner].

Eric Fitzgerald, of the Sex Crimes Unit of the Metro Nashville Police Department, testified that he interviewed the victim. Detective Fitzgerald testified that the victim was initially a "little stand-offish," but that she eventually described the events, which she stated began when she was in fourth grade. She told Detective Fitzgerald that it started as kissing, then [the petitioner] touched her breasts outside her clothes, then inside her clothes, and her vagina, and eventually, [the petitioner] performed oral sex on the victim and had the victim perform oral sex on him. Detective Fitzgerald also interviewed the victim's older brother, who had witnessed some incidents of abuse.

[The petitioner] did not testify or present any proof at trial.

*State v. Denver Joe McMath, Jr.*, No. M2012-01260-CCA-R3-CD, 2013 WL 5918733, at *1-3 (Tenn. Crim. App. Nov. 1, 2013), *perm. app. denied* (March 3, 2014).

### Post-Conviction Hearing

Although the petitioner alleged a number of instances of ineffective assistance in his petition and at the evidentiary hearing, he confines himself on appeal to arguing trial counsel was ineffective for failing to: 1) provide a copy of discovery; 2) sufficiently cross-examine witnesses; 3) advise the petitioner of the applicable sentencing guidelines; and 4) object to prosecutorial misconduct during closing arguments. Additionally, the petitioner claims appellate counsel was ineffective for failing to communicate with him, for failing to include his challenge to the bill of particulars in the motion for new trial, and for failing to raise the issue of prosecutorial misconduct and several evidentiary issues on appeal. Accordingly, we will summarize the portions of the evidentiary hearing testimony relevant to those allegations.

The first witness called by the petitioner was Woodrow Ledford, an investigator with the Metro Police Department. Investigator Ledford testified he was involved in the

investigation of the petitioner but could not remember if a "controlled phone call" was made in this case. Investigator Ledford did, however, admit if a recording was made of such a call it would have been turned over to the District Attorney's Office.

The petitioner then testified concerning his claims against trial counsel and appellate counsel. While admitting trial counsel provided him with a copy of discovery and discussed the State's case against him, the petitioner claimed trial counsel failed to sufficiently communicate with him. The petitioner, who was incarcerated prior to trial, also stated trial counsel did not provide him with a copy of the CD which contained some of the State's discovery. The petitioner admitted trial counsel reviewed the CD but did not discuss it with the petitioner after doing so.

While admitting trial counsel sought funds for and hired an investigator as part of his defense, the petitioner claimed trial counsel never discussed the investigator's findings with him. The petitioner admitted, however, that he met with the investigator. The petitioner also stated trial counsel failed to find potential witnesses he felt would have been "pertinent to my case." Though the petitioner failed to provide specific names, he testified trial counsel should have subpoenaed individuals from the childrens' day care and school.

Next, the petitioner testified trial counsel failed to properly "challenge the indictments." While admitting trial counsel requested a bill of particulars, the petitioner claimed the State's response was not specific enough, and he asked counsel to renew his motion and request a more specific response. According to the petitioner, trial counsel did not make a second request of the State.

The petitioner also claimed trial counsel was ineffective for failing to cross-examine certain witnesses. According to the petitioner, both the victim's mother and the victim gave inconsistent statements prior to trial and trial counsel failed to adequately cross-examine them about the inconsistencies. For example, the petitioner testified the victim initially claimed one incident occurred upstairs and then she later testified the same incident took place downstairs, and trial counsel failed to sufficiently cross-examine the victim concerning this inconsistency.

Next, the petitioner testified counsel was ineffective for allowing him to be sentenced under the wrong sentencing act. According to the petitioner, his crimes were committed prior to the 2005 amendment to the sentencing statute, yet he was sentenced under the new statute which allowed the trial court to rely on certain enhancement factors that should not have been considered.

Trial counsel, who represented the petitioner after arraignment through sentencing, testified he has been practicing criminal law for twenty years and has handled forty to fifty jury trials. Trial counsel stated that upon receiving discovery from the State, he mailed a copy of the discovery to the petitioner. Trial counsel reviewed a CD provided by the State and discussed the contents of the CD with the petitioner as well as answered any questions the petitioner had about the discovery and the evidence in his case.

As trial counsel and the petitioner prepared for trial, they "expected some of the testimony to not be consistent with each other" based on the discovery provided by the State. However, trial counsel noted that the inconsistencies were not related to the elements of the crimes charged but differences such as "it happened in the afternoon or it happened at night." Trial counsel not only pointed these differences and inconsistences out during the witnesses' testimony but also summarized them during his closing argument.

Trial counsel filed "a bill of particulars that asked specific questions – dates, times, places, details on the specifics of the allegation." However, the State's first response was not very specific, so he requested more information and received a "more detailed Election of Offenses where the specifics were discussed about how and when and all that."

When questioned about the advice he provided concerning the petitioner's sentencing options, trial counsel testified they discussed the fact the petitioner had an option about "which act to be sentenced under. And we chose one, and I believe that's on the record, and there was no issue about it at that time." According to trial counsel, he met with the petitioner on two occasions prior to the sentencing hearing and advised the petitioner of his options under each act during their first meeting.

The final witness was the petitioner's appellate counsel.[1] Appellate counsel testified he has been practicing for thirteen years during which time he has handled twenty-five criminal jury trials and several criminal appellate matters. Appellate counsel was assigned to the petitioner's case after the sentencing hearing and, therefore, he handled both the motion for new trial and the petitioner's appeal. In preparing both the motion for new trial and the appeal, appellate counsel spoke with and exchanged numerous letters with the petitioner. Appellate counsel also spoke with trial counsel and reviewed the record.

---

[1] According to the record, the petitioner's trial counsel withdrew from the petitioner's case prior to the filing of the motion for new trial. New counsel was then appointed to represent the petitioner during the motion for new trial and on appeal. In order to avoid confusion, we will refer to new counsel as appellate counsel though he handled both trial and appellate matters.

While appellate counsel and the petitioner agreed on some issues to include in the motion for new trial and on appeal, such as some evidentiary issues and consecutive sentencing, appellate counsel did not believe other issues the petitioner wished to pursue had merit, such as the bill of particulars and prosecutorial misconduct. Appellate counsel, therefore, only raised those issues which, in his experience, provided the petitioner with the best opportunity to obtain relief.

When questioned specifically as to why he did not raise the issue of whether the petitioner was sentenced under the appropriate sentencing act, appellate counsel testified that his review of the sentencing hearing transcript revealed the issue had been discussed during the hearing with the petitioner and the petitioner had made an informed decision. Therefore, appellate counsel did not raise the issue on appeal.

## Analysis

The petitioner contends trial counsel and appellate counsel rendered ineffective assistance. The State responds that the petitioner has failed to establish any deficiency by either. Upon our review of the record, we agree with the State.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded

of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

Trial counsel has a duty to "conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed." *Baxter*, 523 S.W.2d at 933. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691; *see also State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). However, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691.

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 578. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of

law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick,* 454 S.W.3d at 457.

### A. Trial Counsel

Initially, the petitioner contends trial counsel was ineffective in providing discovery. While admitting trial counsel shared written discovery and discussed "the contents of the disk of evidence provided by the State" with the petitioner, the petitioner complains trial counsel was ineffective because the petitioner "never saw the actual evidence from the disk." However, other than making his claim, the petitioner failed to present any proof during the post-conviction hearing as to what discovery trial counsel failed to provide him and/or how he was prejudiced by not being able to personally review the CD in question. Thus, the petitioner has failed to meet the burden required of him and is not entitled to relief.

Next, the petitioner claims trial counsel was ineffective for failing to adequately cross-examine witnesses and point out inconsistencies in their testimony. However, the petitioner fails to provide examples or arguments in support of his claim as to how trial counsel's action's prejudiced his case. A brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7). Failure to comply with this basic rule will ordinarily constitute a waiver of the issue. Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000) (determining that issue was waived when defendant cited no authority to support his argument on appeal). The petitioner does not support this claim with any argument or authority; consequently, it is waived.

The petitioner next contends trial counsel was ineffective for failing to request "the case be dismissed" because the "victim testified at trial that she was not touched in the vaginal area, as alleged by the State in the Election of Offenses." Initially we note the petitioner fails to specify which counts of the indictment he claims should have been dismissed. Additionally, because the petitioner failed to make a copy of the trial transcript an exhibit to the post-conviction hearing, we must rely on the summary of the victim's testimony provided by this Court on direct appeal.

The petitioner also claims trial counsel was ineffective for failing to properly advise him concerning his sentencing options. The indictment alleged that the offenses were committed between September 5, 2000, and September 4, 2003. For offenses

committed prior to June 7, 2005, sentencing was governed by prior law, which provided for "presumptive" sentences. Trial courts were to enhance and/or mitigate a defendant's sentence based upon the application of enhancement and mitigating factors. *See* Tenn. Code Ann. § 40-35-210(d), (e) (2003).

In response to *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), our legislature amended Tennessee's sentencing scheme in 2005 and eliminated presumptive sentences. The amended act also provided that the trial court set a sentence within the range and consider imposing the minimum sentence. Tenn. Code Ann. § 40-35-210(c)(1). The trial court "shall consider, but is not bound by" certain "advisory sentencing guidelines," which include that the sentence be adjusted, as appropriate, for any enhancement or mitigating factors shown. Tenn. Code Ann. § 40-35-210(c)(2). However, "defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982," cannot be sentenced pursuant to the amended sentencing act without a waiver of the defendant's ex post facto protections. Tenn. Code Ann. § 40-35-210, Compiler's Notes.

Trial counsel testified that he and the petitioner discussed the fact the petitioner could choose under which act he wanted to be sentenced. According to trial counsel, "we chose one, and I believe that's on the record, and there was no issue about it at that time." Appellate counsel's testimony corroborated that of trial counsel. When questioned about the issue, appellate counsel noted he reviewed the record and recalled a discussion in open court about the petitioner's having a choice and the petitioner's making that choice. Again, we note the trial transcript, including the sentencing hearing, was not introduced as an exhibit during the post-conviction hearing, and therefore, is not included in the record on appeal. Thus, based on the testimony of trial and appellate counsel and the record before us, the petitioner has failed to prove his factual allegation that he was not properly advised of his rights and options concerning sentencing and was, therefore, sentenced under the wrong act, by clear and convincing evidence. Accordingly, the petitioner is not entitled to relief on this claim.

The petitioner's final claim regarding trial counsel is that trial counsel was ineffective for failing to object to portions of the State's closing argument. However, the petitioner fails to support his claim with any argument or citations to the record or appropriate authorities; therefore, the petitioner has waived consideration of this claim. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b); *Thompson*, 36 S.W.3d at 108.

*B. Appellate Counsel*

In his brief to this Court, the petitioner lists several claims of ineffective assistance of counsel directed at appellate counsel, including failure to adequately communicate with the petitioner, failure to include the bill of particulars issue in the motion for new trial, and failure to include the issue of prosecutorial misconduct and certain evidentiary issues on appeal. However, the petitioner has failed to support his claims with any argument, citations to the record, or appropriate authorities; therefore, the petitioner has waived consideration of these claims. *Id.*

Despite the petitioner's waiver, the record supports the conclusion of the post-conviction court that the petitioner has failed to establish ineffectiveness on the part of appellate counsel. Contrary to the petitioner's claim, appellate counsel testified he met with the petitioner and exchanged numerous letters with him prior to filing the motion for new trial and the petitioner's appeal. In addition to consulting with the petitioner, appellate counsel also met with trial counsel and reviewed the transcripts from the petitioner's trial. Based on his experience, appellate counsel found a handfull of issues he believed might provide the petitioner with relief and raised those issues. "[D]eference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *Goad*, 938 S.W.2d at 369. In reviewing informed decisions based upon adequate preparation, courts give deference to strategic and tactical choices. *Id*. Furthermore, second guessing these decisions is not a function of the court. *See Henley*, 960 S.W.2d at 579. The petitioner has failed to show how appellate counsel's informed decisions based on his adequate preparation, amount to unreasonable representation. Thus, the petitioner is not entitled to relief.

_____
J. ROSS DYER, JUDGE

- 11 -