IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 7, 2020

## JONQUARIUS CUNNINGHAM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-18-170        Kyle C. Atkins, Judge**

_____

### No. W2019-01292-CCA-R3-PC
_____

Petitioner, Jonquarius Cunningham, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief. In 2015, Petitioner was convicted of one count of attempted second degree murder, one count of reckless endangerment, two counts of employing a firearm during the attempt to commit a dangerous felony, and two counts of aggravated assault, for which he received an effective sentence of twenty-three years' incarceration. This court affirmed the judgments of conviction on direct appeal. *State v. Jonquarius Cunningham*, No. W2016-00065-CCA-R3-CD, 2017 WL 3616667, at *1 (Tenn. Crim. App. Aug. 23, 2017), *no perm. app. filed*. Thereafter, Petitioner instituted a collateral proceeding seeking post-conviction relief. Following a hearing, the post-conviction court denied relief. On appeal, Petitioner contends that he was denied the effective assistance of counsel based on trial counsel's failure to introduce at trial the deposition transcript of one of the victims. He further contends that his judgment of conviction in count five is void based on inconsistent verdicts. Following a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Noble Grant, III, Jackson, Tennessee, for the appellant, Jonquarius Cunningham.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

The relevant facts at trial, as summarized by this court on direct appeal, were as follows:

Gary Patrick testified that, on July 21, 2013, he was on Conger Street in Jackson, Tennessee to meet his friend, Jerry Massengill. Patrick saw two classmates from school, [Petitioner] and [co-defendant Randy Taylor, Jr.], as he was walking down the street with Massengill. Patrick said that no words were exchanged as he and Massengill passed by [Petitioner] and Taylor. Patrick testified that "[a] second later [he] heard shots" and he turned around to see both [Petitioner] and Taylor shooting at him. Patrick also testified that they continued shooting at him as he ran away and after he fell to the ground. Patrick identified [Petitioner] at trial and in a photographic lineup shortly after the shooting. Patrick was shot thirteen times, including once in the neck, and was paralyzed and confined to a wheelchair as a result of his injuries.

On cross-examination, Patrick said that he had not talked to [Petitioner] or Taylor that morning. Regarding what the shooters were wearing, Patrick could only recall that Taylor was wearing a "fishing hat." Patrick confirmed that he was deposed on November 1, 2013, while he was still in the hospital. He did not recall the answers he gave during the deposition, although he recalled participating in the deposition. Patrick also confirmed that he answered questions that [Petitioner] asked him on Facebook. Patrick said that he did not remember the Facebook conversation, although he confirmed the messages were sent from his account. Defense counsel read the messages, in which [Petitioner] asked, "What made you tell them I shot you? What made you think that?" and to which Patrick replied, "Cuz [sic] you're the only one I seen [sic] run up and my big brother said you did."

On redirect, Patrick confirmed that, at his deposition, he repeatedly said that he saw [Petitioner] shooting at him. Patrick also said that he only responded to [Petitioner's] Facebook messages so that [Petitioner] would leave him alone. On recross examination, Patrick said that he could not describe [Petitioner's] gun but that he remembered one shooter was wearing a hoodie and one was wearing a fishing hat.

- 2 -

Jerry Massengill testified that he was Patrick's brother-in-law and that they were friends in July 2013. Massengill confirmed that he was on Conger Street with Patrick around 8:00 a.m. Massengill saw both [Petitioner] and Taylor on Conger Street, but he did not know them at the time. Massengill said that he and Patrick walked by [Petitioner] and Taylor and that no one said anything. Massengill then heard shots, turned around to see [Petitioner] and Taylor shooting at him and Patrick, and ran to the side of a building. Massengill suffered a graze wound to his hand but was not shot. Massengill testified that Taylor was wearing a fishing hat and [Petitioner] was wearing a hoodie. Massengill was not able to identify [Petitioner] in a photographic lineup. Massengill confirmed that he was absolutely positive both [Petitioner] and Taylor had guns and were shooting at them. Massengill identified [Petitioner] at trial as one of the shooters.

Investigator Marvin Jerome Rodish, Jr. was employed by the City of Jackson Police Department ("JPD") at the time of the incident. Investigator Rodish located and photographed nineteen shell casings and one bullet at the crime scene; however, due to a sudden rainstorm, he was only able to collect eighteen of the shell casings. Investigator Rodish testified that the majority of the shell casings were found on Conger Street "in a north to south trajectory." He agreed that the location of the shell casings indicated a direction moving towards where Patrick was found lying on the ground.

JPD Investigator Aubrey Richardson interviewed [Petitioner] on July 24, 2013. [Petitioner's] mother was present for the interview, and [Petitioner] signed a waiver of his *Miranda* rights. [Petitioner] provided the following written statement, which was read to the jury:

> I was there when Gary Patrick got shot Sunday morning. Me and Rambo, who is Randy Taylor, went to Allenton Heights the night before. Rambo and I were sitting there when Gary Patrick and some other guy walked by. Rambo, who was wearing a safari hat, got up and ran towards Gary and firing [sic] his chrome pistol at Gary. When he was shooting at Gary, Gary fell down and Rambo ran up to him and stood over him and fired his gun some more. We ran off and went back to where we came from. I went back to the house and Randy came in about thirty seconds later. He took the gun apart and eventually got rid of it. It had a long clip. He called someone he knew in a white van who took us to a trailer in the country. I don't know where it was but I don't

think it was in Jackson. It may have been in Haywood County or something. We stayed there until Wednesday morning. Rambo told me not to tell on him and not to talk to anyone about this.

On cross-examination, Investigator Richardson confirmed that [Petitioner] was brought in by his mother for the interview. [Petitioner] was arrested after giving his statement.

Special Agent Eric Warren, an expert in forensic science firearm identification and ballistics, testified that he was employed by the Tennessee Bureau of Investigation and assigned to the firearms identification unit in the Memphis Crime Laboratory. Warren analyzed the eighteen shell casings found at the scene and determined that the casings came from two separate guns.

After the State rested, [Petitioner] presented testimony from Nicholas Donald, who was a JPD patrol officer at the time of the incident. Officer Donald testified that he was the first officer on the scene. Officer Donald confirmed that Patrick described the shooter as wearing a "tan fishing hat and a plaid shirt." Officer Donald asked Patrick who shot him, and Patrick gave him [Petitioner's] name. Officer Donald confirmed that Patrick did not say there were two shooters at that time, however, on cross-examination, Officer Donald confirmed that, before he left the scene, it was clear to officers that there were two shooters.

At the conclusion of the proof, [Petitioner] was found guilty of the attempted second degree murder of Patrick in count one, unlawful employment of a firearm during the attempt to commit a dangerous felony in count two, the aggravated assault of Patrick in count three, the reckless endangerment of Massengill in count four, unlawful employment of a firearm during the attempt to commit a dangerous felony in count five, and the aggravated assault of Massengill in count six.

*Id.* at *1-2. This court affirmed Petitioner's judgments of conviction on direct appeal. *Id.* at *1.

Petitioner then filed a timely petition for post-conviction relief. Following the appointment of counsel, an amended petition was filed. At a hearing,[1] trial counsel testified that he had been licensed to practice law since 1992 and that his practice was almost exclusively criminal defense. Trial counsel stated that Petitioner was initially charged in juvenile court but that he began representing Petitioner after the case was transferred to circuit court.

Trial counsel recalled that one of the victims, Gary Patrick, provided testimony in a deposition conducted at Regional One Medical Center in Memphis prior to the trial. Although trial counsel was not representing Petitioner at the time of Mr. Patrick's deposition, he obtained a copy of the transcript of the deposition prior to trial. Trial counsel agreed that he identified some "substantial inconsistencies" between Mr. Patrick's trial testimony and his testimony from the deposition. He explained that, at trial, Mr. Patrick testified that he saw both Petitioner and Mr. Taylor shooting at him; however, Mr. Patrick said in his deposition that he only saw Petitioner with a gun. Trial counsel stated that he confronted Mr. Patrick with that inconsistency during trial using the deposition transcript to cross-examine him and to refresh Mr. Patrick's recollection. Trial counsel stated that Mr. Patrick did not want to agree that his deposition testimony was any different than his trial testimony. Trial counsel said, "At one point I passed [the deposition transcript] to [Mr. Patrick] and refreshed his memory, and he agreed it was on the paper and he was there and testified, but he . . . denied he said it or didn't want to agree that he said something different." He continued, "[Mr. Patrick] contradicted himself on the day of trial, saying that, [']well, maybe I was there and said that, but this is what truth is.[']" Trial counsel stated that he did not seek to introduce Mr. Patrick's deposition transcript into evidence as an exhibit because it contained testimony that was damaging to the defense.

Trial counsel testified that Petitioner was originally charged with attempted first degree murder in count four but that the jury convicted him of the lesser included offense of reckless endangerment, as a Class A misdemeanor. Trial counsel noted that, nonetheless, the jury found Petitioner guilty of employing a firearm in the commission of a dangerous felony in count five. Trial counsel explained that he believed that the verdicts were inconsistent because Petitioner was not convicted of the underlying dangerous felony. Trial counsel noted that he did raise the issue of inconsistent verdicts in Petitioner's motion for new trial, thereby preserving the issue for appeal. He said that appellate counsel raised the issue on direct appeal but that this court did not grant relief on the claim.

---

[1] We will limit our summary of the hearing testimony to that which is relevant to the issues on appeal.

- 5 -

On cross-examination, trial counsel testified that, as part of his representation of Petitioner, he "went out to the scene and talked to [Petitioner] and reviewed what happened, his testimony, and tried to interview as many witnesses as [he] could." Trial counsel explained that it was a tactical decision on his part not to introduce the transcript of Mr. Patrick's deposition. He stated that the inconsistencies he wanted to use to impeach Mr. Patrick were "brought out on the record" during his cross-examination of Mr. Patrick.

Petitioner testified that he had wanted trial counsel to introduce the transcript of Mr. Patrick's deposition "[b]ecause [Petitioner] felt like it showed that [Mr. Patrick] wasn't really credible, because he said one thing under oath prior to trial, then he said something totally different at trial under oath again. [Petitioner] felt like that was perjury, really."

At the conclusion of the hearing, the post-conviction court found:

> [W]ith regard to the inconsistent testimony from [Mr.] Patrick during his deposition and the lack of entering the transcript at trial, first I'll note that [Petitioner] failed to show that [trial counsel's] performance was deficient as it relates to that.

> He vigorously cross-examined [Mr. Patrick] about that during the trial. He brought the deposition testimony that was relevant to the inconsistencies to the attention of the jury. He read it to the jury and he cross-examined Mr. Patrick about that. And that was well with[in] the range of competence of the attorney.

> Plus he made a tactical decision not to enter that deposition because the deposition likely contained things that could have hurt . . . [Petitioner's] case.

> The State would have had the right, if he entered the excerpts, to . . . offer whatever excerpts they wanted to enter that len[t] clarity to the issue. So that's a tactical decision that this Court is not allowed to second-guess. And . . . secondly, [Petitioner] didn't show that [the] failure to do that prejudiced the defense in any way.

Regarding the inconsistent verdict issue, the post-conviction court found that the issue was previously determined. It noted that Petitioner raised the issue on direct appeal and was denied relief on the claim. Accordingly, the post-conviction court entered a written order denying relief.

This timely appeal follows.

## II. Analysis

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### Right to Effective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

Petitioner contends on appeal that trial counsel rendered ineffective assistance by failing to introduce the transcript of Mr. Patrick's deposition into evidence at trial. The post-conviction court found that Petitioner failed to establish deficient performance or prejudice based on this claim.

We agree with the post-conviction court's assessment and conclude that Petitioner has failed to show deficient performance on the part of trial counsel or resulting prejudice based on this claim. At the post-conviction hearing, trial counsel testified that he obtained a copy of the transcript before trial and used it to cross-examine and impeach Mr. Patrick in front of the jury. Trial counsel testified that there were valid reasons not to introduce the deposition transcript as there were things in the transcript that would be harmful to the defense. He further explained that, if he attempted to introduce portions of the deposition transcript, the State could have introduced the entire transcript or other portions for completeness. For these reasons, trial counsel made the tactical decision not to introduce the deposition transcript or portions thereof. Trial counsel made a sound tactical decision, which this court will not second guess on appeal. *See Granderson*, 197 S.W.3d at 790. This claim is without merit.

### *Inconsistent Jury Verdicts*

Petitioner also contends that he is entitled to post-conviction relief based on his claim that his conviction in count five is void due to inconsistent jury verdicts. In denying relief on this claim, the post-conviction court correctly found that the issue was previously determined. Petitioner raised the claim in his motion for new trial and on

direct appeal, and this court ruled on the merits of the claim. Specifically, on direct appeal, this court provided the following analysis in denying relief:

Regarding [Petitioner's] firearm conviction related to Massengill, [Petitioner] argues that the jury's verdict was inconsistent because he was acquitted of the predicate felony, attempted first degree murder, and, instead, was found guilty of the lesser included offense of reckless endangerment, a misdemeanor.

In count five, [Petitioner] was indicted for employing a firearm during the commission of a dangerous felony, specifically, the attempted first degree murder of Massengill. The jury found [Petitioner] guilty of the firearm offense, despite having convicted him of the lesser included offense of reckless endangerment; thus, the verdicts are seemingly inconsistent. Nevertheless, the Tennessee Supreme Court has long held that inconsistent verdicts are allowed:

Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment . . . . An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.

*Wiggins v. State*, 498 S.W.2d 92, 93-94 (Tenn. 1973). More recently, the Tennessee Supreme Court stated "that '[t]he validity accorded to [inconsistent] verdicts recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation.'" *State v. Davis*, 466 S.W.3d 49, 77 (Tenn. 2015) (quoting *United States v. Zane*, 495 F.2d 683, 690 (2nd Cir. 1974)).

Additionally, this court has found on multiple occasions that a conviction for employing a firearm during the commission of a dangerous felony can stand despite acquittal of the dangerous felony. *See State v. Joshua Johnson*, No. E2015-00545-CCA-R3-CD, 2016 WL 297886 (Tenn. Crim. App. Jan. 25, 2016), *perm. app. denied* (Tenn. June 23, 2016) (affirming conviction for employing a firearm during the commission of a dangerous felony despite jury's acquittal of attempted first degree murder

- 9 -

and conviction of the lesser included offense of facilitation of attempted first degree murder); *see also State v. Demetrius J. Pirtle and Cordarius R. Maxwell*, No. W2014-02222-CCA-R3-CD, 2016 WL 4009712 (Tenn. Crim. App. July 22, 2016), *perm. app. denied* (Tenn. Nov. 22, 2016) (affirming conviction for employing a firearm during the commission of a dangerous felony despite jury's acquittal of attempted first degree murder and conviction of the lesser included offense of attempted second degree murder). Despite the acquittal on the attempted first degree murder charge, the State presented evidence from which a rational trier of fact could have found that [Petitioner] committed attempted first degree murder, and that he thereby employed a firearm during the commission of a dangerous felony. Accordingly, [Petitioner] is not entitled to relief on this issue.

*Jonquarius Cunningham*, 2017 WL 3616667, at *5-6.

"A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." Tenn. Code Ann. § 40-30-106(h) (2018). When a claim has been previously determined, it cannot form the basis for post-conviction relief. *Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) (citing *Harris v. State*, 947 S.W.2d 156, 174-75 (Tenn. Crim. App. 1996)). Accordingly, Petitioner is not entitled to relief based on this claim.

### III. Conclusion

After a thorough review of the record and relevant authorities, we conclude that the post-conviction court properly denied post-conviction relief. Accordingly, we affirm the judgment of the post-conviction court.

---

ROBERT L. HOLLOWAY, JR., JUDGE