IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 13, 2026 Session

## ADONIS DONNELL HOLBROOKS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
No. 2018-A-33     Cynthia Chappell, Judge
_____

**No. M2025-00702-CCA-R3-PC**
_____

Adonis Donnell Holbrooks, Petitioner, was convicted of attempted rape of a child, solicitation of a minor, especially aggravated sexual exploitation of a minor, and sexual exploitation of a minor via electronic means. *State v. Holbrooks*, No. M2019-02099-CCA-R3-CD, 2020 WL 6060440, at *1 (Tenn. Crim. App. Aug. 19, 2020), *perm. app. denied* (Tenn. Feb. 4, 2021). Petitioner subsequently sought post-conviction relief on the basis of ineffective assistance of counsel. The post-conviction court denied relief after a hearing, and Petitioner appealed to this Court. We affirm the judgment of the post-conviction court because Petitioner failed to establish prejudice.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Manuel B. Russ (on appeal), and Patrick McNally (at hearing), Nashville, Tennessee, for the appellant, Adonis Donnell Holbrooks.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Ronald Dowdy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Petitioner was convicted of multiple sexual offenses after a series of text messages to the nine-year-old victim on her iPod touch. *Id.* at *1. He was sentenced to an effective sentence of twelve years at 100%. *Id.* In the text messages, the victim initially told Petitioner she was nine years old but later claimed that she was twelve. *Id.* Petitioner

asked the victim to send pictures of her vagina and breasts; in turn, he sent photographs of his penis and nipples. *Id.* Petitioner inquired about the victim's level of sexual experience, acknowledging that he was "way too old" for her but asking for her address, nonetheless. *Id.* The victim's mother discovered the text messages and turned the device over to police. *Id.* at *2. Eventually, police posed as the victim and continued to communicate with Petitioner. *Id.* During these exchanges, Petitioner tried to set up a meeting with the victim at an abandoned Target. *Id.* When Petitioner arrived, he was arrested. *Id.* at *3. The conversation with the victim was visible on Petitioner's phone at his arrest, and a search of his car resulted in officers finding an air mattress, pump for inflating the mattress, and travel kit with condoms and Vaseline. *Id.* The proof at trial indicated that the victim's mother may have known Petitioner through a website named "Tagged" and that she used the name "P.K." which stood for "Preacher's Kid." *Id.* A joint stipulation at trial stated that a forensic examiner located the messages on the iPod; that they were exchanged using the victim's mother's email address; and that the iCloud account email address associated with the iPod was the mother's email address. *Id.* Petitioner testified at trial that he believed he was exchanging messages with an adult. *Id.* The report prepared by an expert hired by Petitioner showed there was no evidence Petitioner had interacted with anyone on "Tagged" and that there was little evidence on the phone to support his claim he was speaking with someone of legal age. *Id.*

After being convicted, Petitioner sought a direct appeal challenging the sufficiency of the evidence. *Id.* at *4. This Court upheld the convictions, and the supreme court denied permission to appeal. *Id.* at *1. Petitioner sought post-conviction relief.

In his pro se petition, Petitioner alleged that he received ineffective assistance of counsel. Specifically, Petitioner argued that trial counsel failed to: (1) properly file and litigate a motion for a bill of particulars; (2) investigate Petitioner's medical records; (3) obtain a transcript of juvenile court proceedings; (4) develop proof about the victim's mother's emails and FaceTime calls; (5) develop proof that the mattress was not evidence of an intent to commit rape; (6) spend adequate time with Petitioner; and (7) challenge the jury instructions and seek special instructions. After counsel was appointed, an amended petition was filed. In addition to the issues raised in the pro se petition, the amended petition argued that trial counsel was ineffective for stipulating the defense expert report that essentially refuted Defendant's testimony, supported the State's theory of the case, and cast him as an untruthful witness.

*Post-Conviction Hearing*

Petitioner's wife, a registered nurse and case manager at Vanderbilt, testified at the post-conviction hearing that she and Petitioner married in 2001 and had two sons. She explained that they visited family in Kentucky before Petitioner's arrest and that the

mattress found in Petitioner's car was used by their children when they visited family. She testified that the children punctured the mattress a few weeks prior to the arrest and that it was in the car because Petitioner was supposed to put it in the dumpster at work. She acknowledged this was consistent with Petitioner's testimony at trial.

James Simmons, an expert in criminal defense, testified that the victim's mother acknowledged at trial that she used the dating app "Tagged" with the nickname "Preacher's Kid" and may have met Petitioner at some point but claimed that she had never seen him on a website. Mr. Simmons testified that Petitioner's own trial expert contradicted his trial testimony and was more consistent with the State's theory of the case.

Petitioner testified that trial counsel did not get his medical records that would have explained he had Vaseline in his possession to temporarily treat his eczema until he could get prescription "cream that is for eczema." Petitioner reviewed his medical records and acknowledged that the Vaseline was actually for dermatitis or dry skin.

Petitioner testified that he met the victim's mother on "Tagged" and saved her as a contact in his phone as "Preacher." Petitioner insisted that he thought he was communicating with "Preacher" when he received the messages that ultimately led to his convictions. Petitioner also testified that the air mattress in his car was damaged and he intended to throw it in the trash. Petitioner claimed that he and trial counsel only met eight times during the pendency of this case.

Petitioner admitted on cross-examination that at trial, he claimed the Vaseline was for chapped lips. He also admitted that the victim sent him a picture of her face and that the picture depicted a minor.

Trial counsel testified that his practice consisted of primarily criminal defense work and that he had represented clients in twenty to thirty jury trials. Trial counsel testified that he met with Petitioner "far more than double" eight times, as claimed by Petitioner. Trial counsel recalled that Petitioner agreed to hire an expert to examine his cell phone. Trial counsel explained that it was important to establish the defense theory that the communication took place between Petitioner and the victim's mother, rather than a minor. Trial counsel sought the help of another attorney to help him understand technology better. Trial counsel asked the other attorney to review the expert report and discussed it with him. Trial counsel explained that they were unable to definitively establish that there was any contact with the victim's mother. Trial counsel noted that Petitioner did not provide him with any prior text messages or other forms of communication with the victim's mother. Trial counsel also claimed that Petitioner did not raise the issue of the air mattress with him prior to trial or tell him about his medical history.

Trial counsel testified that the purpose of the stipulation to enter the defense expert report into evidence was to try to provide evidence that corroborated some of Petitioner's trial testimony. Trial counsel thought that a portion of the report was going to be redacted but testified that he learned at the post-conviction hearing that the report admitted at trial was the unredacted version. Trial counsel "did not know why it was not" redacted and could not explain why it was not redacted. Trial counsel "took responsibility" for the entry of the unredacted report. Trial counsel admitted that his law license had been suspended but that it was active at the time he represented Petitioner and his suspension did not affect his ability to represent Petitioner.[1]

Following the hearing, the post-conviction court entered an order denying post-conviction relief. In the order, the post-conviction court specifically found Petitioner's wife to be a credible witness. The post-conviction court also found Mr. Simmons to be a credible witness and gave "his [expert] opinions great weight." The trial court "did not find [Petitioner] credible on the disputed points." The post-conviction court found trial counsel credible. The post-conviction court determined that Petitioner "submitted no proof" of how a bill of particulars would have or could have "affected the outcome of trial" and failed to show prejudice by trial counsel's decision. The post-conviction court also determined that Petitioner failed to demonstrate prejudice by trial counsel's failure to secure medical records and found that trial counsel's decision in this regard was not deficient. The post-conviction court found trial counsel's failure to secure the transcript of the juvenile hearing was not deficient though it "might have been an aid in the cross-examination" of the victim's mother. The post-conviction court determined that trial counsel was not ineffective for failing to challenge the evidence about the mattress because the State's theory of the use of the mattress was contradicted by Petitioner's own testimony and the "jury accredited the State's theory." The post-conviction court ruled that Petitioner failed to show that trial counsel's communication was inadequate, accrediting trial counsel's testimony that he met with Petitioner multiple times, presented Petitioner with a "really good" plea offer, recommended an expert, and retained an expert. With regard to trial counsel's alleged failure to challenge jury instructions and request special jury instructions, the post-conviction court noted that Petitioner "provided no evidence as to what jury instruction(s) should have been given" or whether the jury received improper instructions. In other words, Petitioner failed to establish prejudice. Lastly, regarding the stipulated report entered at trial, the post-conviction court determined that the use of the report was a "strategic decision by trial counsel" and therefore did not establish ineffective assistance of counsel. The post-conviction court determined that the admission of the unredacted report, even though not intended by trial counsel, did not make "such a difference as to undermine the validity of the jury's verdict . . . [because] the jury had ample

---

[1] Trial counsel testified that the law license of the attorney he hired to help him with the technology portion of the case had also been suspended by the time of the post-conviction hearing.

- 4 -

basis on which to accept the defense theory if it chose to do so, but the theory was rejected." In conclusion, the post-conviction court found that Petitioner failed to show clear and convincing evidence that trial counsel's acts or omissions were so serious as to fall below the objective standard of reasonableness under the prevailing professional norms; that Petitioner was prejudiced by any alleged deficiency; or that there was a reasonable probability that but for trial counsel's performance, the result of the trial would have been different.

Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner argues that the post-conviction court "erroneously determined [] trial counsel was not ineffective when he called [the expert] as a witness at trial" through his report.[2] The State disagrees, agreeing with the post-conviction court's assessment that Petitioner failed to demonstrate trial counsel was ineffective for admitting the expert's report into evidence via a stipulation.

*I. Ineffective Assistance of Counsel*

The right to effective assistance of counsel is safeguarded by the constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove
> either deficiency or prejudice provides a sufficient basis to deny relief on the

---

[2] We limit our discussion to the issues raised on appeal. To the extent Petitioner raised additional issues in his petition for relief, and failed to raise them on appeal, we will not address them. *See Jackson v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). As such, we review a post-conviction court's findings of fact under a de novo standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. *Id.* (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015).

When reviewing the post-conviction court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the [post-conviction] court." *Fields*, 40 S.W.3d at 456. Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Id.* (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457.

Here, the post-conviction court determined that Petitioner failed to demonstrate trial counsel was ineffective for admitting his expert's report into evidence via a stipulation. Petitioner argued that trial counsel was deficient because the unredacted report was consistent with the State's theory of the offense and the report stated that the expert was unable to find evidence that Petitioner interacted with anyone on the "Tagged" app or that Petitioner believed he was communicating with an adult when he was communicating with the victim. The post-conviction court recounted the conclusions of the expert and the testimony from trial noting that Petitioner relied on his "prior communication with the victim's mother as the foundation for his belief that at the time of the sexual communications with the victim, he could reasonably assume that he was communicating with an adult. . . ." The post-conviction court noted that the report indicated that any

message sent to Petitioner from the iPod touch would have appeared to come from the victim's mother's email address. As a result, the post-conviction court found the report "not only rebutted [the victim's mother's] testimony that she did not pair her email to the victim's iPod touch but also lent some credibility to [Petitioner's] asserted belief that he was communicating with an adult. . . ." In other words, that "the jury was presented with evidence that could support" Petitioner's theory of the case.

Petitioner takes great issue with the expert's statement that there was "little evidence to support [Petitioner's] position that he believed he was speaking with someone he previously met on Tagged who was of legal age, and thus he believed they were role playing during this incident." As to the effect of the introduction of the report, the post-conviction court deemed this to be a strategic decision by trial counsel and that, notwithstanding the failure to ensure that the redacted report was admitted into evidence, the court could not find that the expert's final statement that there was "little evidence" to support Petitioner's belief about with whom he was communicating "made such a difference as to undermine the validity of the jury's verdict." In other words, the post-conviction court found that trial counsel was not ineffective and that Petitioner failed to demonstrate that the stipulation affected the outcome of the trial. We partially agree with the post-conviction court's conclusion. The proof at trial established that Petitioner was texting with someone who provided photographs of herself and that the photographs depicted a child, not an adult. Petitioner himself admitted as much at the post-conviction hearing. While the report certainly advanced the possibility that Petitioner's version of the events was plausible, the report also strongly supported the State's theory of the case, especially the unredacted portion of the report, which included the conclusion that there was "little evidence" to support Petitioner's version of the events. We recognize that the fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982); *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Here, trial counsel explained that he retained the expert and employed another lawyer who better understood technology to examine Petitioner's phone and put forth proof to support Petitioner's version of the events, that Petitioner was in contact with the victim's mother, not the victim. Trial counsel testified that the report was supposed to be redacted and learned at the post-conviction hearing that the report entered as an exhibit was indeed *not* redacted and included a conclusion that bolstered the State's theory of the case. Contrary to the finding of the post-conviction court, we find the admission of the unredacted report deficient. While trial counsel certainly had a strategy, it is hard if not impossible to conclude that the strategy was "informed" and based on "adequate preparation" when the report was entered in the unredacted state. *Id.* However, we agree with the post-conviction court that Petitioner failed to prove prejudice. The jury was given the entire report, portions of which still supported Petitioner's theory, and

rejected that version. Petitioner failed to show that the admission of the report affected the outcome of the proceedings. Petitioner is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_S/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE